**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

TRANG NGUYEN, *on behalf of herself and all others similarly situated,*

Plaintiff,

v.

U-HAUL CO. OF NEW YORK AND VERMONT, INC., U-HAUL INTERNATIONAL, INC. and AMERCO

Defendants.

---

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff TRANG NGUYEN (hereinafter, "Plaintiff NGUYEN" or "Plaintiff"), on behalf of herself and all others similarly situated in the United States, by and through her undersigned counsel, hereby bring this Class Action Complaint against Defendants, U-HAUL CO. OF NEW YORK AND VERMONT, INC., U-HAUL INTERNATIONAL, INC. and AMERCO (collectively, "Defendants" or "U-Haul") and alleges the following:

## NATURE OF THE ACTION

1. Defendant U-HAUL CO. OF NEW YORK AND VERMONT, INC. is a subsidiary of U-HAUL INTERNATIONAL, INC., which is a subsidiary of AMERCO. Defendants operate

in the moving equipment rental business on the East Coast and throughout the United States, selling a "do-it-yourself" moving system in 21,000 locations within 50 U.S. states and 10 Canadian provinces. This network system has allowed the U-Haul brand to grow into a fleet of about 139,000 trucks, 108,000 trailers and 38,000 towing devices. In addition, the Defendants offer over 536,000 rooms and "47 million square feet of storage space at owned and managed facilities throughout North America."[1] Defendants claim to be the "largest installer of permanent trailer hitches in the automotive aftermarket industry."[2]

2.  U-Haul has long represented itself as offering top-notch customer care within the moving industry. As an industry leader U-Haul holds itself out as a quality brand with honest employees, a great management team, and a commitment to great customer service.

3.  However, in recent years Defendants have left consumers bewildered and disappointed with their refusal to address problems created by their own system failures, dishonest advertisements, and inattentive management.

4.  Most significantly, Defendants have refused to live up to their reservation guarantee policy, which states "When you make a truck or trailer reservation, we guarantee to provide you with the equipment size, location and pick up time, as agreed. Should you not receive the equipment size, location and pick up time you agreed to, U-Haul will pay you $50."

5.  As detailed below, this reservation guarantee policy arose out of earlier litigation alleging that U-Haul had engaged in fraudulent business practices by promising customers that their reservation was "confirmed" and then forcing them to wait hours or days or travel long distances to pick up their rental equipment.  The guarantee was part of a settlement the purpose of which was to deter such conduct in the future.

---

[1] https://www.uhaul.com/About/History/
[2] https://www.uhaul.com/About/History/

6.     As part of their extensive and comprehensive nationwide marketing campaign, Defendants actively promote their reservation guarantee policy on their website and marketing material.  Defendants' reservation guarantee representations are central to the marketing of their moving services, because these representations assure consumers that they will in fact receive the equipment they ordered or, at a minimum, be compensated in the event that they do not.

7.     In this case, Defendants promised Plaintiff NGUYEN a 6 x 12 cargo trailer at the location she selected but failed to deliver on that promise. Plaintiff NGUYEN followed all the steps required to ensure that she received her trailer at her designated location, but Defendants neither provided her with the trailer she ordered nor compensated her with $50, as promised by their reservation guarantee policy.

8.     Plaintiff NGUYEN's experience was far from unique.  Defendants have deceived hundreds of thousands of consumers throughout New York and the United States into renting moving equipment with the expectation that their equipment would be timely available at their designated location and that they would be compensated if it was not. However, Defendants consistently fails to pay consumers the $50 when the ordered equipment is unavailable.

9.     This lawsuit seeks redress for the deceptive manner in which Defendants have marketed and continue to market their reservation guarantee policy to the general public. Plaintiff brings this proposed consumer class action individually and on behalf of all other persons similarly situated, who, from the applicable limitations period of six years up to and including the present (the "Class Period"), did not receive $50 when the equipment they ordered was unavailable at the designated time and location.

10.    Plaintiff seeks to secure, among other things compensatory damages, statutory damages, punitive damages, injunctive relief, equitable and declaratory relief, restitution, and

alternative damages, for similarly situated purchasers, against Defendants, for violating New York statutes that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes include New York's Deceptive Acts or Practices Law (NY GBL § 349), and New York's False Advertising Law (NY GBL § 350). Plaintiff also brings claims for Common Law Fraud, Breach of Contract and Negligent Misrepresentation.

11. Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by federal laws or regulations.

**JURISDICTION AND VENUE**

12. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

13. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

14. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendants, pursuant to New York Statute N.Y. CVP. Law § 302, because they conduct substantial business in this District. Some of the actions giving rise to the Complaint took place in this District, and Plaintiff's claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to person or property in this state arising out of Defendants' acts and omissions

outside this state. Additionally, this court has personal jurisdiction over Defendants because their moving equipment and storage facilities are advertised, marketed, distributed, and sold throughout New York State. Defendants engaged in the wrongdoing alleged in this Complaint throughout New York State, and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and the Defendant is a resident of this District under 28 U.S.C. 1391(c)(2) because it is subject to personal jurisdiction in this district.

## PARTIES

***Plaintiff***

16. Plaintiff TRANG NGUYEN is, and at all times relevant hereto has been, a citizen of the State of New York and resides in New York County. On April 29, 2017, Plaintiff NGUYEN placed an order on www.uhaul.com to rent a 6 x 12 Enclosed Cargo Trailer to be picked up the same day at the U-Haul facility located at 3630 College Point Blvd, Flushing, NY 11354. Plaintiff NGUYEN paid $29.95 for the 6 x 12 Enclosed Cargo Trailer and an additional $8.00 for damage protection, for a total of $37.95. Plaintiff NGUYEN ordered the cargo trailer believing it would be at the location that she had selected. However, Plaintiff NGUYEN arrived at the Flushing facility to discover that the cargo trailer was unavailable there. U-Haul then failed to compensate her $50, as promised by its reservation guarantee policy. Plaintiff NGUYEN was not informed that the trailer she had reserved was not available at the selected location until she arrived there.

17. As a result of Defendants' failure to make good on their promise, Plaintiff NGUYEN suffered injury in fact and lost money. Had Plaintiff NGUYEN known the truth about Defendants' misrepresentations, she would not have ordered the trailer.

18. As a result of Defendants' deceptive and unlawful conduct, Plaintiff NGUYEN cannot now allow herself to order U-Haul moving equipment, as she has no real guarantee that any equipment she orders will actually be available or that she will be compensated in the event that it is not. However, she would be willing to order equipment from U-Haul again if she was assured that its guarantee was genuine and that she would be compensated $50 immediately, without delay or evasion, in the event that the ordered equipment was unavailable.

***Defendants***

19. Defendant U-HAUL CO. OF NEW YORK AND VERMONT, INC. is a corporation organized under the laws of New York with its headquarters at 139 Broadway, Albany, New York 12202 and an address for service of process at the CT Corporation System, 111 Eighth Avenue, New York, NY 10011. It is a subsidiary of U-HAUL INTERNATIONAL, LLC.

20. Defendant U-HAUL INTERNATIONAL, LLC is a corporation organized under the laws of Nevada with its headquarters at 2727 N. Central Avenue, Phoenix, AZ 85004 and an address for service of process at CT Corporation System. 3800 N. Central Ave., Suite 460, Phoenix, AZ 85012. Defendant U-HAUL INTERNATIONAL, LLC develops and manufactures moving equipment and storage rental units for consumer and professional markets. It provides moving equipment and storage throughout the United States through a network of suppliers. Defendant U-HAUL INTERNATIONAL, LLC manufactures, markets, and sells the U-Haul brand, which includes rental trucks, trailers, self-storage units and other pieces of equipment. It is a subsidiary of AMERCO.

21.   Defendant AMERCO is an American corporation organized under the laws of the State of Nevada, with its headquarters at 5555 Kietzke Lane, Suite 100, Reno, Nevada 89511 and an address for service of process at The Corporation Trust Company of Nevada, 701 S Carson Street, Suite 200, Carson City, NV 89701.

## FACTUAL ALLEGATIONS

22.   Defendants' longstanding history of violations of consumer protection laws has been amply documented. In 2008, Santa Cruz Superior Court Judge Samuel S. Stevens ruled in favor of the plaintiffs in a class action lawsuit brought against U-Haul and its reservation policy. In his ruling, Judge Stevens observed that U-Haul "had used the words 'confirmed reservation' in order to lock up customers as soon as possible and minimize the chances that customers are going to shop around."[3] Judge Stevens found that U-Haul had engaged in fraudulent business practices by promising customers that their reservation was "confirmed" and then forcing customers to wait hours or days or travel long distances to pick up their rental equipment. He then issued an injunction "barring U-Haul agents from promising 'confirmed reservations' for one-way equipment rentals in California."[4] The injunction was later removed. However, under the settlement agreement U-Haul is obligated to "contact customers the day before their move to schedule the pickup time and location. Once there is agreement, the reservation will be considered 'guaranteed,' and U-Haul will incur a $50 penalty if it fails to fill it." [5]

23.   Unfortunately, this decision has not remedied the problem. Despite many complaints from consumers, Defendants continue to engage in fraudulent and deceptive practices by failing to make good on their reservation guarantee policy.

---

[3] http://articles.latimes.com/2008/jan/18/business/fi-uhaul18
[4] http://articles.latimes.com/2008/jan/18/business/fi-uhaul18
[5] http://articles.latimes.com/2008/jan/18/business/fi-uhaul18

24. Defendants possess and exercise the authority to make changes in the policies and practices and to ensure that their standards and policies are being followed, including their reservation guarantee policy, but failed to do so.

25. Defendants violated laws against consumer fraud and false advertising by advertising a false reservation guarantee claim to Plaintiff and the Class in an effort to induce Plaintiff and the Class into ordering moving equipment from them. In fact, consumers are regularly denied the moving equipment they ordered at the location they selected and then denied any compensation for this. Plaintiff and the Class would not have attempted to rent vehicles from U-Haul had they known it would not make good on its reservation guarantee policy.

**<u>Consumer Complaints Regarding U-Haul</u>**

26. Consumer complaints about U-Haul and the fraudulence of its reservation guarantee policy abound. Here is a small sampling:

27. Gregg from California recounts:

> I said to the clerk "so, I'm getting a 50 dollar discount on this, right?" and he tells me he cant do that. I point to the poster and say "Your poster says that I'm guaranteed equipment, location and time… none of those criteria have been met today." He turns around and looks at the poster like he's never seen it before in his life, and turns back around and says "well you are getting a truck, i cant give you 50 dollars and a truck."
>
> I knew this was complete BS, but it was obvious I wasn't going to get anywhere with this clerk and I was already an hour behind schedule. So I decide to go to the other location and get the 14 foot truck.. which I get, and have the same conversation with the clerk there about this so called guarantee. I get the same answer from him. Of course after all of this i was seething mad, and I decided that I better go home and read the fine print on this "guarantee", before I strangle the guy behind the counter.
>
> Here it is:
>
> Item number 5 does indeed state that they can substitute equipment, but ONLY if it is of equal or greater value than the equipment reserved.
>
> I was promised a certain truck (or better) at a certain location, at a certain time, or else I would receive 50 dollars. What I got was a different truck at a different location at a different time, and no 50 dollars.

So, this means that Uhaul doesn't make good on their guarantees and you cannot rely on them.

https://consumerist.com/2008/06/11/despite-class-action-lawsuit-u-hauls-50-reservation-guarantee-is-still-completely-meaningless/ (last accessed 06/02/2017)

28.   Jack of Mobile, Alabama explains:

On Oct 20, 2016 I made an online reservation at U-Haul for a tow dolly. U-Haul has a reservation guarantee which says "When you make a reservation, we guarantee to provide you with the equipment, location, and pick up time agreed. Should you not receive the equipment size, location, and pick up time you agreed to U-Haul will compensate you $50." I received a call from U-Haul the day before my scheduled pick up day saying the equipment was not available at the location in my reservation and that I would need to drive to a location 40 miles away. U-Haul will not honor the reservation guarantee since I agreed to go to the other location. I only agreed to do this because at this point I had no option. Their reservation guarantee is misleading and worthless.

When I went to the other location to pick up the tow dolly I noted one of the straps was torn. They indicated they do not keep the replacement straps and that I would need to drive the dolly back to the location where I had made my original reservation to have the strap replaced. This is the second time this has happened to me where U-Haul sent me to a non-official U-Haul site (one at a convenience store and one at a used car lot) where I had to wait a very long time because they don't have staff dedicated to U-haul equipment and then had to drive equipment to official an U-Haul site to have the equipment repaired. In summary don't plan on picking up the equipment where you reserved it, don't expect them to honor their reservation guarantee, and allow time for equipment to be transported and repaired at another U-Haul site.

https://www.consumeraffairs.com/company/uhaul.html?page=2 (last accessed 06/02/2017)

29.   Marce of Roslidale, Massachusetts relates:

Where can I rate the negative stars? My story is very simple. They have a "Your reservation is guaranteed or we will give you $50." policy. All I can expect is for them to follow through. I am not asking for much. Moving is not easy! All I wanted was a truck to move 17' for 48 hours, since they could not do it. I said I found this on the website. I ask to please have my $50. They said "no problem we will process it." Then I never received it. I later received an email said "You are all set to pick up your truck in Malden." I was like this is crazy. I cancelled my reservation!

https://www.consumeraffairs.com/company/uhaul.html?page=3 (last accessed 06/02.2017)

30.   Katie of Waco, Texas writes:

Nothing like being hung up on and called "unreasonable" when I requested that the $50 "guarantee" be applied to our reservation after the trailer was not available at the

reserved location, but rather at an alternate location. I was spoken to very rudely and told I should be happy to drive to an alternate location because some people had to drive farther. Also, apparently U-Haul is run by a regional manager in Texas, as she does not have a supervisor.

https://www.consumeraffairs.com/company/uhaul.html?page=5 (last accessed 06/02/2017)

31. Todd of Colorado Springs, Colorado tells us:

> I reserved a truck three weeks prior to my move, Friday the 29th. On wed the 27th at 6:45 pm (15 min prior to closing) the transportation office called to tell me that no trucks were available. I live two block from the rental location and the lot is full of trucks. The agent tells me that I could drive 300 miles to NB and pick up a truck and that she would cover miles and two additional days. I considered it but was not able to drop everything, my packing my Job etc... so NB would not work. I requested the $50.00 the website lists as compensation for Uhaul not having a truck available and I was told I did not qualify. As a result I will be delayed 6 days, miss a job interview and incur additional costs. Luckily my landlord is a stand up guy and he is very accommodating. I will never use Uhaul again, each phone call has been a lesson in stone walling. They display a lack of customer service and integrity. Very disappointed.

https://www.consumeraffairs.com/company/uhaul.html?page=8 (last accessed 06/02/2017(

**Plaintiff NGUYEN's Experience**

32. Plaintiff NGUYEN went to the Defendants' website www.uhaul.com on April 29, 2017 to look at their self-moving equipment. Plaintiff NGUYEN responded to various internet representations by U-Haul advertising their low-cost, do-it-yourself options. Defendants advertised the following:

> Pick up your U-Box moving containers with our specially designed trailer. When you finish packing your shipping container, bring it back to your neighborhood U-Haul location to get stored or shipped. With this option, do everything on your schedule for a low cost.
>
> https://www.uhaul.com/UBox/ (last accessed on 5/4/2017)

33. Defendants advertised their 6 x 12 cargo trailer as follows:

> Save time by reserving and scheduling your 6 x12 enclosed trailer rental online today. We put safety first, so all trailer customers are advised to load the trailer

heavier in front, drive slower than you normally would, and please, always wear
your seatbelt.

https://www.uhaul.com/UBox/ (last accessed on 5/4/2017)

34. Furthermore, Plaintiff NGUYEN viewed their reservation guarantee policy, which

states:

Your U-Haul reservation is guaranteed! When you make a reservation, we
guarantee to provide you with the equipment size, location, and pickup time as
agreed. Should you not receive the equipment size, location, and pickup time you
agreed to, U-Haul will compensate you $50.

https://www.uhaul.com/FrequentlyAskedQuestions/ (last accessed 5/11/17)

35. Upon viewing these representations, Plaintiff NGUYEN placed an order to rent a 6

X 12 cargo trailer from Defendants' Flushing, Queens facility through their online reservation

system.  Defendants' website promised "Your reservation is guaranteed or we will give you $50."

**Exhibit A**.

36. Plaintiff NGUYEN then received an email confirming her order.  The email

confirmation stated: "You've selected a 6 x 12 cargo trailer for your move. You are scheduled to

pick up your equipment at U-Haul Moving & Storage of Flushing on Saturday, April 29, 2017 at

3:45pm for 24 hours." **Exhibit B.**

37. The order confirmation directed Plaintiff NGUYEN to use Defendants' "Express

Online Check-In" in order to "Reduce your in-store pickup time."  So Plaintiff NGUYEN checked

in electronically and then received confirmation of the check-in.  This confirmation stated

"Congratulations, you just cut your wait time in half.  See you today at 3:45 pm!"  **Exhibit C**.

38. Upon arriving at the Flushing facility later that day, however, Plaintiff NGUYEN was

told by a sales representative that her name was not on the list of those slated to receive a 6 X 12

cargo trailer that day.  Plaintiff showed the representative the electronic confirmation of her order,

but this did not alter the representative's position.  The sales representative then called another customer on the list who had not yet arrived in order to check whether s/he was indeed arriving, in order to then give Plaintiff NGUYEN the customer's trailer in the event that s/he was not arriving. It turned out that this customer was just behind Plaintiff NGUYEN in line.  Thus, this was not an option.

39. Plaintiff NGUYEN then called U-Haul's Woodside, Queens location to inquire whether a 6 X 12 cargo trailer was available there.  It was not.

40. Plaintiff NGUYEN then inquired about obtaining her $50 compensation as per Defendants' reservation guarantee policy.  The sales representative instructed her to call U-Haul customer services at 1-800-789-3638.  She called this number, explained that she wanted to collect her $50 compensation, and provided the details of her order.  At this point, the customer service representative informed her that she was being transferred to the scheduling department and transferred her immediately, without giving Plaintiff NGUYEN a chance to reiterate that she was calling about the $50, not to schedule another order.

41. Plaintiff NGUYEN was actually transferred, not to any scheduling department, but to the Woodside, Queens location she had spoken with earlier.  Plaintiff NGUYEN provided her order information and explained that she was attempting to collect the $50 guaranteed by Defendants.  She was then told that she could obtain a cargo trailer at Defendants' Inwood, Long Island location.  Plaintiff NGUYEN explained that this location was too inconvenient.  The Woodside representative then responded with "I will cancel the order" and immediately ended the call, ignoring that the announced purpose of the call was the $50, not placing a new order.  As with her earlier conservation with customer service, Plaintiff NGUYEN was not given so much as a second to reiterate this fact.

42.   Soon thereafter, Plaintiff NGUYEN received a text message informing her that her reservation was at the Inwood, Long Island location, **Exhibit D**, notwithstanding that she had expressly communicated to Defendants' representative that she was not interested in this option.

43.   At around the same time, Plaintiff NGUYEN  also received an email that, just like the text above, purported to confirm her reservation at the Inwood, Long Island facility, stating "If this does not work for you, please call us or reply at:.." **Exhibit E**.  The email thus placed the burden on Plaintiff NGUYEN to cancel an order which she had expressly declined to place.  This technique of evasion is identical to the one used on Marce of Roslidale, Massachusetts, as described above in ¶ 29.

44.   Todd of Colorado Springs, Colorado noted that each phone call with U-Haul "has been a lesson in stone walling." ¶ 31. And this describes Plaintiff NGUYEN's experience as well. Again and again, Plaintiff NGUYEN attempted to collect the $50 compensation promised to her by Defendants.  Again and again, Defendants intentionally gave her the run-around, pretending as though she was attempting to place a new order (or had already placed a new order) in order to avoid addressing the issue about which Plaintiff NGUYEN had actually contacted them.  At every point, Plaintiff NGUYEN expressly communicated that that she was calling about the $50 promised by the reservation guarantee policy.  At every point, her clear statements were ignored and the call was terminated before its purpose could be reiterated.

45.   Plaintiff NGUYEN's experience reflects Defendants' systematic practice of deception and evasion, the purpose of which is to repeatedly frustrate and exhaust consumers in their attempts to collect the $50 owed them under Defendants' reservation guarantee policy, in the hope that they will simply give up and leave Defendants $50 richer than they would otherwise have been.  Nothing other than this policy of frustration and exhaustion prevented U-Haul from

providing Plaintiff and other consumers their $50 on the spot, at the location where the equipment they ordered was declared to be unavailable.

**A Reasonable Consumer Would Be Deceived By Defendants' Conduct**

46. A reasonable consumer would be deceived and/or mislead by Defendants' reservation guarantee policy.

47. Defendant's reservation guarantee policy is material to a reasonable consumer's decision to procure U-Haul services. The policy is reasonably seen as increasing the likelihood that the equipment ordered will be available at the designated time and place and as compensating consumers in the event that it is not. The reservation guarantee policy thus increases the attractiveness of U-Haul over other transportation options.

48. Reasonable consumers, such as Plaintiff and the Class, reasonably expected that when they ordered rental moving equipment it would be at the location they selected or that they would be compensated with $50, as guaranteed by Defendants.

49. Reasonable consumers (including Plaintiff and the Class) expect that businesses such as Defendants to honestly advertise and follow company policies, and businesses such as Defendants intend and know that consumers rely upon advertisements and reservation policies in making their consumer decisions. This expectation by consumers is reasonable, since companies are prohibited from engaging in deceptive acts or practices in the conduct of any business, trade or commerce under New York State law and the consumer protection laws of every state in the United States and the District of Columbia.

**Plaintiff and the Class Relied on Defendants' Claims**

50. Plaintiff was attracted to U-Haul because she preferred an industry leader in moving at a relatively low-cost with a prearranged pick-up at the location of her choice.

51. Plaintiff and the Class reasonably relied to their detriment on Defendants' false and misleading reservation guaranteed misrepresentations. They would not have placed their orders with Defendant had they known that it would not fulfill its reservation guarantee policy.

52. Plaintiff's and the Class's reliance was reasonable because New York and other states have placed requirements on companies that are designed to ensure that the claims they make about their products are truthful and accurate. Defendants intended that Plaintiff and the Class rely on their reservation guaranteed policy. Indeed, the purpose of that policy is precisely to induce reliance.

53. Plaintiff and the Class did not know, and had no reason to know, that the rental moving equipment would be unavailable at the time and place at which they reserved it or that Defendants would not make good on their reservation guarantee policy and compensate them $50.

**Plaintiff and the Class Were Injured**

54. Plaintiff and the Class were damaged by Defendants' deceptive conduct when Defendant failed to deliver the benefit of their bargain to them by failing to compensate them $50 when the equipment they ordered was not available at the time and place promised by Defendants.

## CLASS ACTION ALLEGATIONS

55. Plaintiff NGUYEN seeks relief in her individual capacity and as a representative of all others similarly situated in the United States. Pursuant to Rule 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, she seeks certification of the following class:

> All persons in who 1) ordered U-Haul moving equipment in the United States, 2) were not provided with the equipment they ordered at the time and location for which they ordered it, and 3) were not given $50 in compensation for the equipment's unavailability, during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. ("the Nationwide Class")

56. In the alternative, Plaintiff seeks certification of the following class:

> All persons in who 1) ordered U-Haul moving equipment in New York, 2) were not provided with the equipment they ordered at the time and location for which they ordered it, and 3) were not given $50 in compensation for the equipment's unavailability, during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. ("the New York Class")

57. Excluded from the Classes are current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also, excluded from the Classes is the judicial officer to whom this lawsuit is assigned.

58. Plaintiff reserves the right to revise the Class definitions based on facts learned in the course of litigating this matter.

59. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

60. **Numerosity:** Both Classes are so numerous that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff, but it is clear that the number greatly exceeds the number that would make joinder practicable, particularly given Defendants' comprehensive distribution and sales network. Class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

61. **Commonality and Predominance:** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. All Class members were exposed to Defendants' deceptive and misleading reservation guarantee

representation because this policy is stated on Defendants' website and referenced in its electronic communications. Common questions of law or fact include:

    a. whether Defendants' reservation guarantee policy was false and misleading because Defendants' failed to deliver on it;

    b. whether this failure was intentional and/or systematic;

    c. whether Defendants deprived Plaintiff and the other Class members of the benefit of the bargain when Defendants provided neither the equipment ordered nor the $50 promised compensation;

    d. whether Defendants must disgorge any and all profits it has made as a result of their misconduct;

    e. whether Defendants should be required to fulfill its reservation guarantee policy by compensating consumers with $50 at the U-Haul facility where consumers expect to pick up their equipment, immediately after the equipment is declared to be unavailable, without requiring any further action on the part of the consumer.

62. Defendants engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, are minor by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

63. **Typicality:** Plaintiff's claims are typical of those of Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and Class members both ordered moving equipment from Defendants and

sustained similar injuries arising out of Defendants' conduct in violation of New York State law and the consumer protection laws of other states. Defendants' unlawful, unfair and fraudulent conduct was the same irrespective of when and where it was encountered.   The injuries of Class members were caused directly by Defendants' misconduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of other Class members and are based on the same legal theories.

64.   **Adequacy:** Plaintiff will fairly and adequately represent and pursue the interests of either Class and has retained competent counsel experienced in prosecuting nationwide class actions. Plaintiff understands the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the interests of either Class.  Neither Plaintiff nor Plaintiff's counsel has any interests that conflict with or are antagonistic to the interests of either Class. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the Classes. Plaintiff and Plaintiff's counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Classes and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the members of the Classes.

65.   **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be

impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of Class members' claims and the absence of material or dispositive differences in the statute and common laws upon which the claims are based, the Class will be easily managed by the Court and the parties.

66.   **Declaratory and Injunctive Relief:** The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

67.   The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

68.   Defendants' conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

69.   Further, in the alternative, the Classes may be maintained as class actions with respect to particular issues, pursuant to Fed.R.Civ.P. 23(c)(4).

**CAUSES OF ACTION**

**COUNT I**

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class).**

70. Plaintiff NGUYEN realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

71. Plaintiff NGUYEN brings this claim on behalf of herself and the other members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law ("NY GBL § 349").

72. NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

73. To establish a claim under NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

74. Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin the unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual

damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

75.    The practices employed by Defendants, whereby Defendants advertised, promoted, and marketed their reservation guarantee policy and then failed to provide either the guarantee reservation or the promised $50 compensation was unfair, deceptive, and misleading to Plaintiff and other Class members and in violation of NY GBL § 349.

76.    Defendants engaged in deceptive, unfair and unconscionable commercial practices toward the Class.  These include:

      a.    knowingly and falsely advertising their reservation guarantee policy with the intent to deceive Plaintiff and Class members into believing that they would either received the equipment they ordered or be compensated $50 if such is unavailable at the designated time and place;

      b.    causing Plaintiff and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies;

      c.    intending that Plaintiff and Class members rely on Defendants' misrepresentations, in order to induce them to rent Defendants' equipment and disregard other moving options.

77.    The foregoing deceptive acts and practices were directed at consumers.

78.    Under all of the circumstances, Defendants' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

79. Defendants' actions impact the public interest because Plaintiff and members of the Class were injured in exactly the same way as thousands of others renting moving equipment from Defendants.

80. Plaintiff NGUYEN and other Class members seek to enjoin such unlawful, deceptive acts and practices as described above. Each of the Class members will be irreparably harmed unless the unlawful, deceptive actions of Defendants are enjoined, because Defendants will continue to falsely and misleadingly advertise their reservation guarantee policy.

81. Plaintiff NGUYEN was injured in fact and lost money as a result of Defendants' deceptive reservation guarantee policy.

82. Plaintiff NGUYEN and Class members seek declaratory relief and injunctive relief in the form of an Order compelling Defendants to fulfill their reservation guarantee policy by compensating consumers with $50 at the U-Haul facility where consumers expected to pick up their equipment, immediately after the equipment is declared to be unavailable, without requiring any further action on the part of the consumer.

## COUNT II

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class).**

83. Plaintiff NGUYEN realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

84. Plaintiff NGUYEN brings this claim individually and on behalf of the Class for violations of NY GBL § 349.

85. Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in her own name to enjoin such unlawful act or practice, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

86. By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by not adhering to their reservation policy and failing to provide Plaintiff and the Class with the benefit of their bargain.

87. The practices employed by Defendants, whereby Defendants disseminated their reservation guarantee policy was unfair, deceptive, and misleading to Plaintiff and other Class members and in violation of NY GBL § 349.

88. The foregoing deceptive acts and practices were directed at consumers.

89. Plaintiff NGUYEN and the other Class members were injured in fact and lost money as a result of Defendants' deceptive and unfair trade acts.  In order for Plaintiff and Class members to be made whole, they need must receive the $50 they are owed as well as punitive damages, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs, and other relief allowable under NY GBL § 349.

**COUNT III**

**DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (FALSE ADVERTISING LAW)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class).**

90. Plaintiff NGUYEN realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

91. Plaintiff NGUYEN brings this claim individually, as well as on behalf of members of the class, for violations of NY GBL § 350.

92. Defendants have been and/or are engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

93. New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

94. Defendants caused to be made or disseminated throughout New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers and the Class.

95. Defendants' affirmative misrepresentations as alleged herein were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were, and continue to be, exposed to Defendants' material misrepresentations.

96. Defendants have violated N.Y. Gen. Bus. Law § 350 because the misrepresentations regarding their reservation guarantee policy, as set forth above, was material and likely to deceive a reasonable consumer.

97. Plaintiff NGUYEN and members of the Class have suffered an injury, including the loss of money or property, as a result of Defendants' false and misleading advertising. In ordering Defendants' moving equipment, Plaintiff and members of the Class relied on the misrepresentations promoted in the reservation guarantee policy. Those misrepresentations were false and/or misleading because the moving equipment they ordered was not at the specified location and they were not compensated for this failure.

98. Plaintiff NGUYEN and members of the Class have suffered an injury, including the loss of money or property, as a result of Defendants' false and misleading advertising.

99. Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff NGUYEN and members of the Class seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a (1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**COUNT IV**

**BREACH OF CONTRACT**

**(brought on behalf of the Nationwide Class in conjunction with the contract law of other states and the District of Columbia to the extent New York contract law is inapplicable to out-of-state plaintiffs, or, in the alternative, on behalf of the New York Class)**

100. Plaintiff NGUYEN realleges and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

101. Plaintiff NGUYEN brings this claim individually and on behalf of the Class.

102.  When Plaintiff NGUYEN and the Class ordered moving equipment from Defendants, they and Defendants entered a contract according to which Defendants would either 1) provide the equipment ordered at the designated time and location or 2) pay Plaintiff and Class members $50. Defendants did neither of the two and are accordingly in breach of contract.

103.  As a result of this breach, Plaintiff NGUYEN and the Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, and/or other relief as deemed appropriate by the Court.

**COUNT V**

**NEGLIGENT MISREPRESENTATION**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class).**

104.  Plaintiff NGUYEN realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

105.  Plaintiff NGUYEN brings this claim individually, as well as on behalf of members of the Class, for negligent misrepresentation.

106.  To state a claim for negligent misrepresentation in New York, a plaintiff must allege that "(1) the parties stood in some special relationship imposing a duty of care on the defendant to render accurate information, (2) the defendant negligently provided incorrect information, and (3) the plaintiff reasonably relied upon the information." *Amos v. Biogen Idec, Inc.*, No. 13-CV-6375T, 2014 WL 2882104, at *5 (W.D.N.Y. June 25, 2014).

107.  Element #1 is satisfied because Plaintiff NGUYEN and U-Haul stood in a special relationship imposing a duty of care on Defendant.

108. To determine the existence of a "special relationship" in a commercial transaction, a court examines three factors: "'whether the person making the representation held or appeared to hold a unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'" *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 474–75 (E.D.N.Y 2013).

109. U-Haul holds itself out as possessing special expertise in moving equipment and its use. For example, Defendants sent Plaintiff NGUYEN an email explaining that "All towing is subject to inspection" and that Defendants would need to "verify your towing vehicle's hitch." **Exhibit F**. Indeed, Defendant acknowledges its special expertise in instructing journalists interested in interviewing a "local moving expert" to contact Defendant's Media Relations Department.[6]

110. Renting U-Haul equipment also involves a special relationship of trust. Moving is a complicated and often expensive business. And consumers need to trust Defendants because Defendants' failure to provide the equipment consumers reasonably expect will often create burdensome delays, additional costs, and other inconveniences. In placing an order with U-Haul, consumers elect to forgo other options, and thus place themselves at the mercy of Defendants. Additionally, Defendants know that consumers rely on their representations and make their plans accordingly.

111. Element #2 of a negligent misrepresentation claim is satisfied because Defendants, directly or through their agents and employees, negligently represented to Plaintiff and the Class

[6] https://www.uhaul.com/About/JournalistRequests/

that they would be compensated $50 if Defendants failed to make the equipment they ordered available at the designated time and location.

112. Element #3 is satisfied because Plaintiff NGUYEN and Class members reasonably relied upon Defendants' misrepresentations when ordering their moving equipment.

113. As a result of Defendants' wrongful conduct, Plaintiff NGUYEN and members of the Class have suffered and continue to suffer economic losses.

## COUNT VI

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class).**

114. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

115. Defendants intentionally made materially false and misleading representations regarding their reservation guarantee policy.

116. Plaintiff and members of the Class reasonably relied on Defendants' false and misleading representations and did not know the truth about the reservation guarantee policy at the time they ordered U-Haul moving equipment. Defendants knew and intended that Plaintiff and the Class would rely on its misrepresentations.

117. Plaintiff and members of the Class have been injured as a result of Defendants' fraudulent conduct.

118. Defendants are liable to Plaintiff and members of the Class for damages sustained as a result of Defendants' fraud.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. An Order that this action be maintained as a class action and appointing Plaintiff as representatives of the Class;

b. An Order appointing the undersigned attorney as class counsel in this action;

c. Restitution and disgorgement of all amounts obtained by Defendants as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d. All recoverable compensatory and other damages sustained by Plaintiff and the Class;

e. Actual and/or statutory damages for injuries suffered by Plaintiff and the Class and in the maximum amount permitted by applicable law;

f. An order (i) requiring Defendants to immediately cease their wrongful conduct as set forth in this Complaint and (ii) compelling Defendants to fulfill their reservation guaranteed policy by compensating consumers with $50 at the U-Haul facility where consumers expected to pick up their equipment, immediately after the equipment is declared to be unavailable, without requiring any further action on the part of the consumer;

g. Statutory pre-judgment and post-judgment interest on any amounts;

h. Payment of reasonable attorneys' fees and costs; and

i. Such other relief as the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

Dated: June 30, 2017

Respectfully submitted,

By: *__/s/ C.K. Lee__*
C.K. Lee

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*